BEFORE THE FIRST DIVISION, MARCH 7, 1963

No. 67494.—Sears, Roebuck and Co. v. United States, protest 61/12055–12283 (Chicago).

OLIVER, Chief Judge:  The merchandise the subject of this protest is described on the invoice as "reed screening." Examination of illustrative exhibits 1–A and 1–B, received in evidence without objection as representing the imported merchandise, shows that it consists of 15- to 25-foot lengths of a material made by laying reeds side by side and joining them by interwoven strands of wire.  Apparently, the reeds are of a uniform length of 6 feet and the wire strands are 4 inches apart, and the 15- to 25-foot lengths of material so made are rolled up and imported in that fashion.

The merchandise was classified by the collector as manufactures wholly or in chief value of grass or sea grass and assessed with duty at the rate of 12½ per centum ad valorem under the provision therefor in paragraph 1537(a), Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877, and is claimed to be properly dutiable at the rate of 8½ per centum ad valorem under the provision in paragraph 409 of the said act, as modified by T.D. 54108, for—

Reeds wrought or manufactured from rattan or reeds, whether round, flat, split, oval, or in whatever form, * * *.

At the trial of the issue, plaintiff established that the material which was joined by the strands of wire to fashion the imported merchandise was both botanically and commonly known as reeds, to wit, Phragmites communis or common reed.

However, it is the contention of the defendant that the reeds covered by paragraph 409, supra, were intended by Congress to be the product only of rattan, and not any other kind of reeds.

In support of this contention, counsel cites the following legislative history of the provision: Tariff Readjustment, 1929; Hearings before the Committee on Ways and Means, 70th Congress, 2d session, volumes 4, 5, 6, covering schedules 4, 5, 6, pages 2728–2746; and the 1921 hearings, page 1185.

It should be observed, first, that it is a well-established rule in the construction of statutes that resort to legislative history is not warranted unless it appears that there is obscurity or ambiguity in the language of the statute. George B. Zaloom v. United States, 21 CCPA 518, T.D. 46972. In its decision, in the case of Calif-Asia Co., Ltd. v. United States, 39 CCPA 133, C.A.D. 475, referring to paragraph 409, here involved, our appellate court said that it did

not consider it necessary to discuss the legislative history of paragraph 409—
* * * for the reason that in our opinion there is no ambiguity in the wording
of the statute * * *.

Consequently, it would seem to follow that reference to legislative history of
paragraph 409 would be improper, unless it were merely for the purpose of cor-
roborating a conclusion already arrived at by other permitted means. *United
States* v. *Kung Chen Fur Corporation,* 38 CCPA 107, C.A.D. 447, and *Universal
Transcontinental Corp.* v. *United States,* 40 CCPA 54, C.A.D. 497.

We observe, secondly, that reference to the legislative history cited by coun-
sel for the defendant does not reveal any expression by the Congress, or by those
who had charge of the legislation, which would even tend to establish the mean-
ing sought to be given the language by the defendant. It consists merely of the
record of the statements of interested parties who were seeking continuance or
alteration of tariff rates upon rattan, reed, and cane before the congressional
committees holding public hearings on tariff readjustment. These, by them-
selves, could not be considered as revealing the intent of the legislature in the
enactment of the statute in question.

It is the rule that, in the construction of statutes, first resort must be had to
the language of the statutes themselves. The statute in question, both as
originally enacted and as modified by trade agreement, provides for—

Reeds wrought or manufactured from rattan or reeds, whether round, flat,
split, oval, or in whatever form, * * *.

The wording appears unquestionably to contemplate coverage of reeds other
than those wrought or manufactured of rattan, since it is obvious that otherwise
the two words "or reeds" after the word "rattan" would be meaningless, re-
dundant, or surplusage. It seems clear that rattan reeds are one kind of reeds,
but this is not to say that they are the only kind of reeds in common parlance or
the only kind of reeds known to commerce. Webster's New International
Dictionary, second edition, 1945, gives the following definition of the term "reed":

1. Any of various tall bamboolike grasses or their slender, often jointed, stems;
specif., the ditch reed (*Phragmites communis*) found in marshes throughout
temperate and warm regions; also, any other species of *Phragmites* or of
*Arundo,* esp. *A.* donax.

We conclude, therefore, that paragraph 409 covers reeds wrought or manu-
factured from rattan and reeds other than those wrought or manufactured from
rattan.

In the brief, filed in its behalf, counsel for the defendant points out that the
evidence shows that the article before the court "is more than a reed," that is
to say, it is screening made with the use of reeds, and, in counsel's view, consti-
tutes a manufacture of reed, as distinguished from the material reed itself.
Since, by definition hereinbefore quoted, a reed is a grass, counsel contends that
the correctness of the classification as manufactures of grass is thus
demonstrated.

In reply, counsel for the plaintiff contends that the joining together of the reeds
by the use of the wire did not change the character of the reeds; that they did
not thereby lose their identity as such. Counsel also points out that the pro-
vision for reeds includes reeds "in whatever form," apparently arguing that
screening is merely a form of reeds.

The record does not establish or tend to establish any facts with respect to the
nature, character, or use of the screening, except, as hereinbefore stated, its
dimensions. It does not appear whether the reeds were imported in the form
of screening merely for economy or safety in transportation, or whether the

screening constitutes an advancement of the reeds along the lines of their ultimate use, or, in fact, is their ultimate use.

In a recent decision, our appellate court very succinctly observed that—

* * * Of all things most likely to help in the determination of the identity of a manufactured article, beyond the appearance factors of size, shape, construction and the like, use is of paramount importance. [*United States* v. *Quon Quon Company*, 46 CCPA 70, 73, C.A.D. 699.]

In this case, the collector classified the merchandise as a manufacture, to wit, a manufacture of grass. A presumption of correctness attends that classification and every finding entering into it. Consequently, it was incumbent upon the plaintiff to establish that the article before the court was the material, reeds, and not a manufacture of reeds, if it hoped to succeed in its claim. We are not able to say, on the basis of the record before us, that the joining of the reeds by means of wires which fashioned a product which is known as screening did not thereby create a manufacture of reeds, and, in a tariff sense, a manufacture of grass.

The argument that the term "in whatever form" covers products such as that at bar we deem of no merit. As we read the statute, the term "in whatever form" must be understood in the light of the language which immediately precedes it— "whether round, flat, split, oval, or in whatever form." In our view, this language refers to the shape or form of the individual reeds, and does not extend the coverage of the provision to articles made with the use of reeds.

On the record before us, the protest claim is overruled, and judgment will issue accordingly.